UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

YUNIEL BENET DOVAL,

         *Petitioner,*

v.                                                        Case No. 3:26-cv-247-JEP-SJH

U.S. IMMIGRATION AND
CUSTOMS ENFORCEMENT, et al.,

         *Respondents.*

_____/

## **ORDER**

Petitioner, an immigration detainee who is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at Krome North SPC,[1] filed a pro se petition for a writ of habeas corpus under 28 U.S.C. § 2241 on February 6, 2026. (Doc. 1). Petitioner is a citizen of Cuba; he was ordered removed in 2012; ICE released Petitioner on an Order of Supervision ("OSUP") on

---

[1] *See* Online Detainee Locator System, U.S. Immigration and Customs Enforcement, available at https://locator.ice.gov/odls/#/search (last visited Apr. 23, 2026). Because Petitioner was detained within the Middle District of Florida when he filed this case, this Court retains jurisdiction despite his transfer. *See Rumsfeld v. Padilla*, 542 U.S. 426, 441 (2004) ("[W]hen the Government moves a habeas petitioner after she properly files a petition naming her immediate custodian, the District Court retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release."); *see, e.g., Elcock v. Streiff*, 554 F. Supp. 2d 1279, 1282 (S.D. Ala. 2008) ("[J]urisdiction attaches upon the initial filing of the § 2241 petition and will not be destroyed by a petitioner's subsequent Government-effectuated transfer and accompanying change in physical custodian. . . . [I]f a § 2241 petition must be transferred every time the petitioner is transferred, it is doubtful that the case would ever be decided.").

February 27, 2013; and following completion of a prison sentence, ICE re-detained him on or about December 22, 2025.[2] (*See* Doc. 1 at 4; Doc. 6 at 2-3). Petitioner argues that (1) his prolonged detention violates the Fifth Amendment's Due Process Clause as the Supreme Court construed it in *Zadvydas v. Davis*, 533 U.S. 678 (2001); and (2) his re-detention and revocation of his OSUP, without changed circumstances, is arbitrary, unlawful, and violates the Immigration and Nationality Act ("INA"). (*See* Doc. 1 at 6). Petitioner asks the Court to order his immediate release. (*Id.* at 7).

On March 13, 2026, the Federal Respondents (ICE and the Department of Homeland Security ("DHS")) filed a response arguing that the Court lacks jurisdiction over Petitioner's claims,[3] and in any event, Petitioner's *Zadvydas*

---

[2] Petitioner and the Federal Respondents acknowledge that ICE detained Petitioner on December 22, 2025. (Doc. 1 at 4; Doc. 6 at 8). However, the website for the Florida Department of Corrections indicates that Petitioner was not released from state custody until December 26, 2025. *See* Corrections Offender Network, Florida Department of Corrections, available at https://pubapps.fdc.myflorida.com/OffenderSearch/InmateInfoMenu.aspx (last visited Apr. 23, 2026). And the Department of Homeland Security paperwork completed on September 29, 2025, reflects that Petitioner would be taken into ICE custody following his release from state custody on December 26, 2025. (Doc. 6-2 at 4). The exact date of Petitioner's re-detention makes no difference in the Court's analysis.

[3] The Federal Respondents argue that two statutory provisions—8 U.S.C. § 1252(g) and § 1252(b)(9)—strip this Court of jurisdiction over Petitioner's claims, because, according to the Federal Respondents, Petitioner is challenging the execution of his removal order and trying to stop removal proceedings. (Doc. 6 at 3-5). The Court disagrees. Petitioner challenges his ongoing detention and whether ICE complied with its regulations when it revoked his OSUP and re-detained him. The Court is satisfied it has jurisdiction over Petitioner's claims. *See Lanvin-Valdez v. U.S. Immigr. & Customs Enf't*, No. 3:26-CV-180-JEP-SJH, 2026 WL 1004569, at *4

2

claim is premature and his OSUP was properly revoked. (Doc. 6). The Warden filed a motion to dismiss, arguing that he is not a proper respondent in this case. (Doc. 5). Petitioner filed a pro se reply to the Federal Respondents' response. (Doc. 7).

The Supreme Court in *Zadvydas* held that indefinite detention of aliens after a final order of removal raises serious constitutional concerns. 533 U.S. at 690–99. Once an order of removal is final, the government may continue to detain an alien only for a reasonable amount of time. *See id.* at 699–701. The reasonableness of the detention is to be measured "primarily in terms of the statute's basic purpose, namely, assuring the alien's presence *at the moment of removal.*" *Id.* at 699 (emphasis added). The Supreme Court held that six months is a presumptively reasonable period to detain a removable alien awaiting deportation. *Id.* at 700–01. "Although not expressly stated, the Supreme Court appears to view the six-month period to include the 90-day removal period [from section 1231(a)(1)(A)] plus 90 days thereafter." *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002).

After that six-month period has passed, if the alien "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to

---

(M.D. Fla. Apr. 14, 2026); *Fuentes v. Ripa*, No. 3:26-CV-134-MMH-PDB, 2026 WL 717982, at *1–2 (M.D. Fla. Mar. 16, 2026).

rebut that showing." *Id.* at 1052 (quoting *Zadvydas*, 533 U.S. at 701). Thus, "in order to state a claim under *Zadvydas* the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* If an alien makes these showings, then the burden shifts to the government to rebut the presumption with sufficient evidence establishing that there is "a significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. Notably, *Zadvydas* claims asserted prior to the presumptively reasonable six-month period are deemed unripe and subject to dismissal without prejudice. *See Akinwale*, 287 F.3d at 1052; *see also Ramos Alvarez v. U.S. Immigr. & Customs Enf't*, No. 3:25-cv-1038, 2025 WL 2591830, at \*1 (M.D. Fla. Sept. 8, 2025).

Petitioner filed this case on February 6, 2026, which is less than two months since the start of his current detention on or around December 22, 2025. Therefore, Petitioner's *Zadvydas* claim is not ripe and will be dismissed without prejudice.

Petitioner also claims that his re-detention and revocation of his OSUP, without changed circumstances, is arbitrary, unlawful, and violates the INA. (*See* Doc. 1 at 6; Doc. 7 at 2-3). According to the Federal Respondents, DHS properly revoked Petitioner's OSUP and "provided [him] with a notice of revocation of release [pursuant to 8 C.F.R. § 241.13(i)] on March 11, 2026,

informing him that his release had been revoked because circumstances had changed—specifically, that ICE was effectuating his removal to Mexico." (Doc. 6 at 9).

Pursuant to 8 C.F.R. § 241.13(i)(2), an OSUP can be revoked when "changed circumstances" create "a significant likelihood that the alien may be removed in the reasonably foreseeable future." "Upon revocation, the alien will be notified of the reasons for revocation of his or her release" and ICE must "conduct an initial informal interview *promptly* after [the revocation] to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." *Id.* § 241.13(i)(3) (emphasis added). "The failure to provide [a petitioner] with an informal interview promptly after his detention or to otherwise provide a meaningful opportunity to contest the reasons for revocation violates [] ICE's own regulations." *Grigorian v. Bondi*, No. 25-CV-22914-RAR, --- F. Supp. 3d ----, 2025 WL 2604573, at *10 (S.D. Fla. Sept. 9, 2025); *see also Kong v. United States*, 62 F.4th 608, 619 (1st Cir. 2023) (concluding that re-detention under § 241.13(i)(2) requires "an individualized determination").

The record reflects that on March 12, 2026, approximately eighty days after Petitioner was re-detained, ICE provided him with a notice of revocation

5

of release. (Doc. 6-2 at 10-12[4]). The notice advised Petitioner that pursuant to 8 C.F.R. § 241.13(i), his OSUP was revoked because "[c]ircumstances have changed such that there is a significant likelihood of removal in the reasonably foreseeable future," in that "ICE is effectuating [his] removal to a safe third country, Mexico." (Doc. 6-2 at 10). He was further advised that he would "be afforded an informal interview" on March 12, 2026, at which he would have "an opportunity to respond to the reasons for this revocation" and "submit any evidence or information" in support of his release. (*Id.* at 11). However, Petitioner received the notice approximately eighty days after his re-detention and on the same day of his informal interview. Notably, the notice and informal interview were only provided to Petitioner the day before the Federal Respondents' response was due in this case.

Even assuming the notice of removal to Mexico (Doc. 6-2 at 15) provided to Petitioner on December 27, 2025, could somehow substitute for the notice of revocation due under 8 C.F.R. § 241.13(i), the approximate eighty-day delay in providing Petitioner with an informal interview cannot be said to comply with the regulation.[5] *See Grigorian*, 2025 WL 2604573 at *9-10 (finding that ICE's

---

[4] While the notice is dated March 11, 2026, it was not served on Petitioner until March 12, 2026. (Doc. 6-2 at 10-12).

[5] Because this Court concludes that ICE has not complied with the regulation, this Court does not address any arguments that Petitioner's detention was otherwise arbitrary or unlawful. (*See* Doc. 1 at 6).

failure to provide an informal interview for over seventy-five days violated 8 C.F.R. § 241.4(l)'s requirement to provide a prompt informal interview[6]); *see also Pham v. Warden*, No. 1:25-CV-1873 DC AC, 2026 WL 673404, at *13 (E.D. Cal. Mar. 10, 2026), *rep. & rec. adopted sub nom.*, 2026 WL 849861 (E.D. Cal. Mar. 27, 2026) ("An interview weeks or months after revocation of release is not a prompt initial informal interview." (quotation marks and citations omitted)); *Bui v. Warden of the Otay Mesa Det. Facility*, No. 25-CV-2111 JES DEB, 2025 WL 2988356, at *4 (S.D. Cal. Oct. 23, 2025) (holding that an interview conducted four months after a petitioner's re-detention did not satisfy the "prompt" informal interview requirement under the regulations); *M.S.L. v. Bostock*, No. 6:25-CV-01204-AA, 2025 WL 2430267, at *11 (D. Or. Aug. 21, 2025) (concluding that an informal interview provided twenty-seven days after re-detention was not in compliance with the regulations). Further, ICE provided Petitioner with notice of the informal interview and his opportunity to respond with evidence on the very same day of the interview— effectively eliminating his opportunity to gather "any evidence or information" to contest the reasons for the revocation in a meaningful manner. 8 C.F.R. § 241.13(i)(3).

---

[6] Similar to 8 C.F.R. § 241.13(i)(3), 8 C.F.R. § 241.4(l)(1) requires that an alien "be afforded an initial informal interview promptly after" revocation for violating a condition of release.

While ICE has wide discretion to revoke an alien's supervised release, it is required to follow its own regulations. *See Mohammed H. v. Trump*, 781 F. Supp. 3d 886, 895 (D. Minn. 2025) (citing *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 265 (1954)); *see also Chevron Oil Co. v. Andrus*, 588 F.2d 1383, 1386 (5th Cir. 1979) ("We think *Accardi* stands for the unremarkable proposition that an agency must abide by its own regulations.");[7] *Gonzalez v. Reno*, 212 F.3d 1338, 1349 (11th Cir. 2000) ("Executive agencies must comply with the procedural requirements imposed by statute" and "must respect their own procedural rules and regulations."). ICE did not do so here. As such, the Court concludes that Petitioner's re-detention violated 8 C.F.R. § 241.13(i)(3) and that he is entitled to release. *See Grigorian*, 2025 WL 2604573 at \*10 (collecting cases); *see also Fuentes*, 2026 WL 717982, at \*3. As such, the Court will grant the petition on this claim.

Finally, in the motion to dismiss, the Warden requests the Court dismiss him from this proceeding with prejudice as an improper respondent. (Doc. 5 at 12). He argues that ICE is Petitioner's "'immediate custodian'" and "the director of ICE's local field office responsible for the Detention Facility – not its 'warden' – is the proper respondent." (*Id.* at 11-12).

---

[7] Decisions from the former Fifth Circuit rendered on or before September 30, 1981, are binding on this Court. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

8

In an order issued on April 14, 2026, this Court addressed the same arguments and denied the warden's motion to dismiss. *See Lanvin-Valdez*, 2026 WL 1004569, at \*2–3. For the same reasons outlined in *Lanvin-Valdez*, the Court will deny the motion to dismiss in this case.

Accordingly, it is

**ORDERED**:

1. The petition for a writ of habeas corpus (Doc. 1) is **DISMISSED IN PART without prejudice** with respect to Petitioner's *Zadvydas* claim but **GRANTED IN PART** as to Petitioner's claim that Respondents violated the INA when revoking his OSUP. Because Petitioner's re-detention without the *prompt* informal interview required by ICE regulations is unlawful, Respondents shall release Petitioner **within 24 hours of this Order**, subject to and in accordance with the conditions in his preexisting order of supervision, and they shall provide Petitioner with access to a telephone to arrange transportation from the detention facility.

2. Respondent Warden's motion to dismiss (Doc. 5) is **DENIED**.

3. The **Clerk** shall enter judgment accordingly, terminate any pending motions, and close the file.

**DONE AND ORDERED** in Jacksonville, Florida, on April 29, 2026.

_____

JORDAN E. PRATT

UNITED STATES DISTRICT JUDGE

c:

Yuniel Benet Doval

Counsel of Record

10